Argued and submitted July 28, affirmed October 27, 1982

In the Matter of the Compensation of
Ralph L. Baer, Claimant.
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Petitioner,*
*v.*
BAER et al,
*Respondents.*

(No. 80-2528, CA A23546)

652 P2d 873

Darrell E. Bewley, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for petitioner.

James P. O'Neil, Myrtle Creek, argued the cause and filed the brief for respondent Ralph L. Baer.

Michael G. Bostwick, Portland, argued the cause for respondent EBI Companies. On the brief was Lindsay, Hart, Neil & Weigler, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

### YOUNG, J.

This is a workers' compensation claim under the occupational disease law. ORS 656.802 to 656.824. The issue is the allocation of responsibility between two successive carriers of the same employer. The referee and the Workers' Compensation Board found SAIF, the initial carrier, liable. We review *de novo,* ORS 656.298(6), and affirm.

Claimant contracted a compensable occupational disease, allergic contact dermatitis, from his exposure to a chemical (potassium dichromate) used in his work as a printer, his occupation for 26 years. Claimant developed the allergy between October, 1976, and January, 1977. In January, 1977, he began treatment with Dr. Weiss, a dermatologist. His condition improved by January 28, 1977. When the allergy developed, the employer's carrier was SAIF. In February, 1977, SAIF accepted the claim as a nondisabling compensable occupational disease, and medical benefits were paid.

Claimant continued to work from January, 1977, to July, 1979, without changes in his duties or workload. He continued to have manifestations of the disease, specifically hand eczema, even though he had followed Dr. Weiss' advice, wore surgical gloves for a time and used the prescribed medication. The condition gradually worsened until July 9, 1979, when claimant suffered significant eruptions of dermatitis. Acting on Dr. Weiss' advice, he did not work for three weeks. Until then, he had not lost any time from work because of the condition. Claimant returned to work on July 30, 1979, and immediately developed new areas of skin eruptions on his hands and fingers, which resulted in tenderness and irritation. He then stopped working and has not worked as a printer since that time.

Between January, 1977, and July, 1979, the employer terminated its workers' compensation coverage with SAIF and obtained coverage from EBI Companies (EBI).[1] In July, 1979, claimant filed a new claim for the occupational disease, and his employer sent the claim to

---

[1] When claimant developed the allergy (between October, 1976 and January, 1977), SAIF was on the risk, and in July, 1979, EBI was the insurer.

EBI. EBI accepted the claim and paid benefits until March, 1980, when it issued a notice of denial.[2] The referee upheld the denial and found SAIF liable.

SAIF, in defense, argues that the last injurious exposure rule applies, citing *Bracke v. Baza'r,* 293 or 239, 646 P2d 1330 (1982), and contends that "the date of disability controls which injurious exposure is liable for the disability."[3] SAIF argues that claimant became disabled and suffered injurious exposure while EBI was on the risk.[4] In *Bracke,* the court stated:

> "Liability for the disability caused by the underlying disease is fixed when the disability arises. A recurrence of symptoms which does not affect the * * * underlying disease does not shift liability for the disabling disease to a subsequent employer." 293 Or at 250.

*See also Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980); *Mathis v. SAIF,* 10 Or App 139, 144-45, 499 P2d 1331 (1972). On the other hand, EBI maintains that the last injurious exposure rule is inapplicable, because the July, 1979, occupational disease claim was based on the recurrence of symptoms caused by claimant's unchanged compensable allergy and was not the result of a new injurious exposure to chemicals.

The medical evidence consists of Dr. Weiss' report and his deposition. He testified that contact dermatitis, once acquired, is a condition that remains constant and unchanged, although its symptoms (skin eruptions) may come and go depending upon the extent of the exposure to the offending substance.[5] In sum, once allergic — always

---

[2] On the basis of an arrangement with claimant, EBI continued to pay benefits after the notice of denial.

[3] The last injurious exposure rule has been applied in occupational disease cases. *See, e.g., Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980) (hearing loss), and *Mathis v. SAIF,* 10 Or App 139, 499 P2d 1331 (1972) (asbestosis).

[4] *Inkley v. Forest Fiber Products Co., supra,* held that the last injurious exposure rule applied to successive insurers of the same employer.

[5] Dr. Weiss explained that there must be exposure to an offending substance over a period of time before the allergy will develop. He made a comparison with poison oak, a type of dermatitis:

> "Certain individuals can work in the woods and be exposed to poison oak for years and years and never have any problems, and then all of a sudden, for

allergic.[6] In *Bracke v. Baza'r, supra,* the claimant developed "meat wrappers' asthma." It was established that she became sensitized to fumes while employed by Baza'r between May, 1974, and September, 1975. She sought hospital emergency room treatment in January, 1977, but her condition of sensitization to the fumes was not recognized. In May, 1977, while employed by Thriftway, her symptoms became more severe and she ceased work. The court concluded that she was

> " 'disabled' at this time in the sense that even after her symptoms subsided she could never successfully return to work as a meat wrapper or in any employment environment with airborne lung irritants." 293 Or at 243.

The court found Baza'r to be liable and stated:

> "Claimant's disease is deemed a 'compensable injury' because it arises 'out of and in the course of employment requiring medical services or resulting in disability.' ORS 656.005(8)(a). By January 12, 1977, before employment with food markets other than Baza'r, claimant had been afflicted with the disease and had required medical service for treatment of symptoms which interfered with her ability to work at her occupation. Thus, on that date, claimant was disabled." 293 Or at 243-44.

We are unable to distinguish *Bracke* from the present case. There is no uncertainty as to the date of onset of the compensable disease. SAIF recognized as much when it accepted claimant's original claim. Nor is there any evidence of an exacerbation of the disease while EBI was on the risk. The evidence is that exposure to the chemicals caused a recurrence of the symptoms. As in *Bracke,* claimant proved that he contacted the allergy and suffered

---

reasons not clear to us, they become allergic and develop an allergy to it. Subsequent exposures, though, they always break out * * *."

Compare Dr. Weiss' description of claimant's allergy with the claimant's "sensitization" to fumes in *Bracke v. Baza'r, supra,* 293 Or at 242.

[6] To explain further the doctor's testimony, we borrow from the opinion of the referee.

> "Dr. Weiss characterized the eruption, also described as hand eczema, in its various stages as symptoms of the allergic contact dermatitis. Although SAIF attempted to establish * * * that the hand eczema * * * and other manifestations of the dermatitis, and the decree thereof, were secondary disease processes also constituting a compensable condition, Dr. Weiss' testimony does not support that position. Dr. Weiss * * * testifies, that those manifestations are *symptoms.* There is no other medical evidence."

"disability" when he became allergic to the chemical. The defense of the last injurious exposure rule does not apply. Claimant's employment while EBI was on the risk did not contribute to the course of, or aggravate or worsen the underlying allergy.

Affirmed.[7]

---

[7] Claimant assigns error to the Board's reduction of the attorney fees awarded by the referee. We are unable to address this issue, because there is no cross-petition for review.